UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

IVY MILLER,

                        Plaintiff,              13 Civ. 7500

     -against-                                  OPINION

HSBC BANK USA, N.A.,

                        Defendant.

----------------------------------------X

A P P E A R A N C E S:

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 2|11|15

          Attorneys for Plaintiff

          LAW OFFICE OF MICHAEL E. HERSKOWITZ, ESQ.
          1999 Flatbush Avenue, Suite 201
          New York, NY 11234

          By:  Michael E. Herskowitz, Esq.


          Attorneys for Defendant

          PHILLIPS LYTLE LLP
          The New York Times Building
          620 Eighth Avenue, 23rd Floor
          New York, NY 10018

          By:  Sean C. McPhee, Esq.
               Joseph B. Schmidt, Esq.

**Sweet, D.J.**

Defendant HSBC Bank USA, N.A. ("HSBC") has moved pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6) to dismiss the amended complaint ("AC") of plaintiff Ivy Miller ("Miller" or "Plaintiff").  Based upon the conclusions set forth below, the motion of HSBC is granted, and the AC is dismissed with prejudice.

**Prior Proceedings**

This action was filed on October 24, 2013, on behalf of 40 plaintiffs and against three different defendants – HSBC, JPMorgan Chase Bank N.A. ("Chase") and Caliber Home Loans Inc. ("Caliber").  On March 26, 2014, all plaintiffs voluntarily dismissed their complaint as against Chase.  Two weeks later, all plaintiffs, except for the first named plaintiff, Miller, voluntarily dismissed their complaint against Caliber.  The following day, all plaintiffs, again with the exception of Miller, voluntarily dismissed their claims against HSBC.

The claims asserted on behalf of 39 of the 40 original plaintiffs in this action were voluntarily dismissed in light of the dismissals of identical claims brought by Miller's attorneys

1

on behalf of countless plaintiffs in no fewer than 12 other actions recently filed in the United States District Court for the Eastern District of New York.[1]

On May 9, 2014, Miller amended her complaint to assert claims solely by her and solely against HSBC.  That filing was rejected by the Clerk of the Court as deficient on May 12, 2014.  Later that day, Miller re-filed the AC.  That filing, too, was rejected by the Clerk of the Court.  The text of that rejection states "leave to file expired May 9, 2014."  (See generally Dkt. Nos. 17-19.)

The AC centers around HSBC's allegedly "fraudulent loan modification program" and is based upon the claim of entitlement to modification.  (See AC ¶¶ 12-24, 37.)  The AC also alleges that HSBC is liable for violations of the Home Affordable Modification Program ("HAMP").  (See AC ¶¶ 6, 21, 34, 35.)

---

[1] See Brito v. FNF Servicing, Inc., 1:13-cv-02347-FB-VMS; Martin v. Bank of America N.A., 1:13-cv-02350-ILGSMG; Nabedrik v. Emigrant Mortgage Company, 1:13-cv-02351-JBW-LB; Rivera v. JPMorgan Chase Bank, N.A., 1:13-cv-02352-RRM-RLM; Manginelli v. Homeward Residential, Inc., 2:13-cv-02334-SJF-AKT; Cumia v. PHH Mortgage Corporation, 2:13-cv-02335-JS-AKT; Traina v. HSBC Mortgage Services, Inc., 2:13-cv-02336-SJFGRB; McQuoid v. Nationstar Mortgage, LLC., 2:13-cv-02338-DRH-WDW; Lewis v. OneWest Bank, FSB, 2:13-cv-02340-DRH-ARL; Green v. Citimortgage, Inc., 2:13-cv-02341-SJF-AKT; Norman v. Wells Fargo Bank, N.A., 2:13-cv-02342 LDW-WDW; Yanes v. Ocwen Loan Servicing LLC, 2:13-cv-02343-DRH-GRB.

The AC also alleges breach of contract, of the implied covenant of fair dealing, promissory estoppel, fraudulent concealment, violation of New York General Business Law § 349, unjust enrichment and violation of Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. § 2605(e).  (AC ¶¶ 45-100.)

The motion of HSBC to dismiss the AC was heard and marked fully submitted on October 29, 2014.

**The Applicable Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader.  Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). However, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 663 (quoting Twombly,

3

550 U.S. at 556).  In other words, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." Twombly, 550 U.S. at 557 (internal quotation marks omitted).

## The AC Is Untimely

On May 15, 2014, Miller re-filed the AC and attached to it a request for an extension of her deadline for leave to file her the AC (the "Request").  (Dkt. No. 19.)  As shown in the Request, HSBC agreed that it would not oppose Miller's request for an extension of her deadline to file the AC on the condition that she comply with Federal Rule of Civil Procedure 6 (b)(1)(B).  (Dkt. No. 19-1.)  Miller has not complied with Rule 6, has made no motion, has offered no good cause, and has suggested no excusable neglect for failing to properly and timely file the AC.  Accordingly, Miller's AC can be dismissed for this reason alone.

## The AC Fails To Set Forth An Enforceable Obligation

Under New York law, a borrower has no entitlement to a permanent mortgage loan modification, and a lender is not liable for breach of contract by failing to offer one.  See JP Morgan

Chase Bank, N.A. v. Ilardo, 940 N.Y.S.2d 829, 841 (N.Y. Sup. Ct.
2012). In Ilardo, a borrower who had participated in a lender's
trial modification plan later applied for, and was denied, a
permanent loan modification. When the borrower defaulted under
his loan, the lender commenced a foreclosure proceeding. In
opposition, the borrower moved for summary judgment seeking a
judicially imposed permanent loan modification. Id. at 832.
The Court denied the motion because the borrower could not
establish that the lender breached an enforceable obligation
imposed under the parties' agreement by failing to offer the
borrower a permanent loan modification. Id. at 841. Notably,
the Court held "there is no federal entitlement to a permanent
loan modification [and] the plaintiff did not breach the
[parties' contract] by failing to offer a permanent modification
of the loan." Id.; see also In re Morales, No. 13-36516, 2014
WL 930199, at *5-6 (Bankr. S.D.N.Y. Mar. 10, 2014) (citing
Ilardo, 940 N.Y.S.2d at 840); Fournier v. Bank of Am. Corp., No.
13-CV-702, 2014 WL 421295, at *7 (N.D.N.Y. Feb. 4, 2014)
(holding that bank "was not obligated to offer Plaintiff a loan
modification due to the asserted 'wrongful delay and denials of
[Plaintiff's] modification application'") (citing Ilardo, 940
N.Y.S.2d at 841).

Similarly, in <u>Wells Fargo Bank, N.A. v. Meyers</u>, 108 A.D.3d 9 (2d Dep't 2013), the Appellate Division reversed the trial court's order imposing a loan modification on the lender. In doing so, the Appellate Division held that the trial court could not rewrite the mortgage because it would violate the Contract Clause of the United States Constitution, stating:

> Indeed, the Supreme Court's interpretation of CPLR 3408(f) as authorizing it to, in effect, rewrite the mortgage and loan agreement would violate the Contract Clause of the United States Constitution . . . [and] the remedy employed by the Supreme Court here, in binding the parties to terms never agreed upon by either side, is without any source for its authority, and goes well beyond what would be justified by the State to safeguard the vital interests of its people.

<u>Meyers</u>, 108 A.D.3d at 22. (internal quotation marks and citations omitted).

The same result reached by the <u>Ilardo</u> Court applies here.  HSBC had no obligation to permanently modify Miller's mortgage loan simply because she may have been offered a temporary loan modification.  Further, as in <u>Meyers</u>, imposing a permanent loan modification on HSBC would amount to rewriting the parties' agreement.  Because Miller is not entitled to a permanent loan modification as a matter of law, the AC is dismissed.

6

Plaintiff ignores <u>Ilardo</u> in her opposition and thus concedes this dispositive issue.

## **The Breach Of Contract Claim Is Dismissed**

To state a claim for breach of contract, the plaintiff must allege: "(1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." <u>Kramer v. N.Y. City Bd. of Educ.</u>, 715 F. Supp. 2d 335, 356 (E.D.N.Y. 2010) (citations omitted).  In order to satisfy the first element, "a plaintiff must plead the provisions of the contract upon which the claim is based." <u>James v. Countrywide Fin. Corp.</u>, 849 F. Supp. 2d 296, 322 (E.D.N.Y. 2012) (citation omitted); <u>see also</u> <u>Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank</u>, No. 11 Civ. 4491, 2013 WL 1294519, at *13 (S.D.N.Y. Mar. 30, 2013), <u>aff'd</u>, 2014 WL 67665 (2d Cir. Jan. 9, 2014) ("When pleading a . . . breach of contract claim, the complaint must at a minimum set forth the terms of the agreement upon which liability is predicated, either by express reference or by attaching a copy of the documents comprising the agreement." (internal quotation marks and citation omitted)).

Further, under New York law, "a modification of a
mortgage term . . . is governed by the Statute of Frauds" and
"must be in writing to be enforceable." Pappas v. Resolution
Trust Corp., 255 A.D.2d 887, 889 (4th Dep't 1998) (citing N.Y.
Gen. Oblig. Law § 5-703(1) (McKinney 2012 & Supp. 2014)); see
also OneWest Bank, FSB v. Davies, No. 16638-11, 2013 WL 846573,
at *5 (N.Y. Sup. Ct. Feb. 22, 2013) ("Modification of mortgages
and/or forbearance agreements are subject to [New York's]
statute of frauds and accordingly, must be in writing to be
enforceable and signed by the party to be charged." (citing N.Y.
Gen. Oblig. Law § 5-703(4))).

Miller's breach of contract claim is based on the
theory that HSBC breached the terms of an alleged "trial
modification" agreement when it failed to provide her with a
permanent loan modification.  (See AC p. 1 ("Plaintiff argues
that . . . she sought a permanent loan modification agreement
through Defendant, its agents, and successors-in-interest as
servicers of Plaintiff's loan but was denied a proper
modification and her performance under the trial modification
contract was frustrated"); see also AC ¶¶ 47-48, 52.)

However, New York courts have routinely held that
there "is no requirement that a foreclosing [mortgagee] modify

its mortgage loan prior to or after a default in payment." US Bank N.A. v. Orellana, 40 Misc. 3d 1204(A), 975 N.Y.S.2d 370, at *3 (N.Y. Sup. Ct. 2013); Graf v. Hope Bldg. Corp., 254 N.Y. 1, 4 (1930) (holding that courts cannot force mortgagees to make loan modifications and holding that in "the absence of some act by the mortgagee which a court of equity would be justified in considering unconscionable, he is entitled to the benefit of the covenant"); Rajic v. Faust, 39 Misc.3d 1234(A), 972 N.Y.S.2d 146, at *6 (N.Y. Sup. Ct. 2013) (noting that courts do not have power to force agreements on parties). "This rule is no less applicable to cases wherein the borrower performs all preliminary steps imposed upon the securing any such modification or refinance arrangements." Valley Nat. Bank v. 58 Vlimp, LLC, 39 Misc.3d 1221(A), 972 N.Y.S.2d 147, at *5 (N.Y. Sup. Ct. 2013).

In addition, Miller fails to attach the alleged modification agreement to her pleading or otherwise "adequately plead the terms of any contract" with HSBC. Abraham v. Am. Home Mortg. Servicing, Inc., 947 F. Supp. 2d 222, 235 (E.D.N.Y. 2013) (citation omitted) ("To survive a motion to dismiss a contract claim, the 'Plaintiff must provide specific allegations as to an agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of

9

the acts at issue.'"); James, 849 F. Supp. 2d at 322 (granting

motion to dismiss where plaintiff had "not specifically

identified the contract (or contracts) at issue and ha[d] not

specified the terms of the agreement that defendant purportedly

breached" (citation omitted)).

Further, Miller's unsupported claim that she "suffered

damages," without any further factual enhancement, is not enough

to properly plead the damages element of a breach of contract

claim.  See Bravo v. MERSCORP, Inc., No. 12-CV-884 (ENV)(LB),

2013 WL 1652325, at *6 (E.D.N.Y. Apr. 16, 2013) ("A claim for

breach of contract must rest on more than a conclusory

allegation that the defendant's breach caused damages, even

where the exact amount of damages is alleged." (citation

omitted)).

Miller, in her opposition, fails to even identify a

contract to serve as the foundation for her breach of contract

claim but contends that, under Federal Rule of Civil Procedure

9(c), she need only generally allege satisfaction of certain

unidentified conditions precedent in order to state a claim.

(Pl.'s Opp'n 3.)  She then alleges that she both satisfied those

conditions precedent and was also "hindered" from completing

them.  Id.

10

Plaintiff's contention regarding conditions precedent fails, not because she inadequately alleged satisfaction of certain conditions, but because she failed to sufficiently allege the existence of an agreement to modify her loan.  For this reason, the exact same breach of contract claim in a nearly identical action filed by Miller's attorneys was recently dismissed.  See Arroyo v. PHH Mortg. Corp., No. 13-CV-2335(JS)(AKT), 2014 WL 2048384, at *7-9 (E.D.N.Y. May 19, 2014). The Arroyo court expressly rejected the same condition precedent arguments stating "[t]o characterize the provision of documents as a 'condition precedent' is somewhat of a mischaracterization. Moreover, the terms of the contractual arrangement, if any, are insufficiently pled."  Id. at *8.  The Arroyo court also rejected the same cases that Miller relies upon here because, unlike the plaintiffs in those cases, Arroyo (like Miller) did not allege the existence of a modification agreement.  Arroyo, 2014 WL 2048384, at *7-8.

Finally, a modification of a mortgage term is governed by the Statute of Frauds and "must be in writing to be enforceable."  Pappas, 255 A.D.2d at 889; OneWest Bank, 2013 WL 846573, at *5; N.Y. Gen. Oblig. Law § 5-703(1) (McKinney 2012 & Supp. 2014).  Miller has not alleged a written agreement to

11

modify her mortgage and by arguing that HSBC should be estopped from relying on the Statute of Frauds, Miller concedes that the purported agreement to modify her mortgage was not reduced to writing and signed by HSBC.  Estoppel is only appropriate, however, where there is an "unconscionable injury" resulting from a promise to modify the loan.  Klein v. Jamor Purveyors, Inc., 108 A.D.2d 344, 349, 489 N.Y.S.2d 556, 560 (2d Dep't 1985).  Miller has not alleged an unconscionable injury and her "unsubstantiated allegations . . . of waiver" of the Statute of Frauds are insufficient.  Carver Fed. Sav. Bank v. Redeemed Christian Church of God, 35 Misc. 3d 1228(A), 954 N.Y.S.2d 758, at *5 (N.Y. Sup. Ct. 2012).

Accordingly, the breach of contract claim is dismissed.

## The Breach Of Implied Covenant Of Good Faith And Fair Dealing Claim Is Dismissed

To adequately allege a claim for breach of the covenant of good faith and fair dealing adequately, a party must first allege "the existence of a contract." Kapsis v. Am. Home Mortg. Servicing Inc., 923 F. Supp. 2d 430, 452 (E.D.N.Y. 2013); see also United Magazine Co. v. Murdoch Magazines Distrib., 146

12

F. Supp. 2d 385, 405 (S.D.N.Y. 2001), aff'd, United Magazine Co.
v. Curtis Circulation Co., 279 F. App'x 14 (2d Cir. 2008)
(dismissing an action when plaintiffs failed to allege a valid
contract because "[a] cause of action for breach of this implied
covenant . . . is dependent upon the existence of an enforceable
contract").  In that regard, as with a breach of contract claim,
the pleader must "set forth the terms of the agreement upon
which liability is predicated, either by express reference or by
attaching a copy of the documents comprising the agreement."
Fillmore E. BS Fin. Subsidiary LLC, 2013 WL 1294519, at *13
(citation omitted).

    Although New York recognizes a cause of action for
breach of the implied covenant of good faith and fair dealing in
certain situations, "[n]o obligation can be implied . . . which
would be inconsistent with other terms of the contractual
relationship."  Sheth v. N.Y. Life Ins. Co., 273 A.D.2d 72, 73,
709 N.Y.S.2d 74, 75 (1st Dep't 2000) (citation omitted); see
also Fesseha v. TD Waterhouse Investor Servs., Inc., 305 A.D.2d
268, 268, 761 N.Y.S.2d 22, 23 (1st Dep't 2003) (duty of good
faith and fair dealing "cannot be construed so broadly as
effectively to nullify other express terms of a contract, or to
create independent contractual rights.")  Here, Miller has
acknowledged that she entered into a loan and mortgage

agreement, which governs the parties' relationship (AC ¶¶ 4, 7) and that she defaulted under the terms of that loan and mortgage agreement (AC ¶ 17).  Miller claims, however, that HSBC breached the implied covenant of good faith and fair dealing by charging her late fees, interest and other delinquency related fees simply because she could not pay them.  (AC ¶ 59(C)).  Because Miller does not allege that those charges are prohibited by the mortgage, this claim fails, as it would nullify the terms of the mortgage in contravention of New York law.

A claim for breach of the implied covenant of good faith and fair dealing will also be dismissed as redundant if it rests on the same factual predicates as the claim for breach of contract.  Matsumura v. Benihana Nat'l Corp., 465 F. App'x 23, 29 (2d Cir. 2012) ("Plaintiffs based their breach of good faith claim on the same operative facts as their breach of contract claim; accordingly, the District Court did not err in dismissing the former claim as duplicative of the latter."); see also Boart Longyear Ltd. v. Alliance Indus. Inc., 869 F. Supp. 2d 407, 420 (S.D.N.Y. 2012).  Here, Miller's claim for breach of implied covenant of good faith and fair dealing is based on the exact same facts as her breach of contract claim and is therefore redundant.  (Compare AC ¶¶ 46-55 with AC ¶ 59(A).)

Finally, if a breach of contract claim is barred by the Statute of Frauds, so too is a claim for breach of the implied covenant of good faith and fair dealing.  See Thiam v. Am. Talent Agency, Inc., 11 Civ. 1465 (GBD), 2012 WL 1034901, at *6 (S.D.N.Y. Mar. 27, 2012) ("Having failed to allege an oral agreement that is enforceable under the Statute of Frauds, Defendants cannot plead a third claim for breach of the covenant of good faith and fair dealing in the alternative."); United Magazine Co., 146 F. Supp. 2d at 405 (holding that because the breach of contract claim was barred by the Statute of Frauds, so too was the breach of the implied covenant of good faith and fair dealing claim).  As demonstrated above, Miller cannot establish that the loan modification she was allegedly offered was reduced to writing.

## The Promissory Estoppel Claim Is Dismissed

"[P]romissory estoppel has three elements: (1) a clear and unambiguous promise, (2) a reasonable and foreseeable reliance by the party to whom the promise is made, and (3) an injury sustained by the party asserting the estoppel by reason of the reliance."  Paxi, LLC v. Shiseido Ams. Corp., 636 F. Supp. 2d 275, 287 (S.D.N.Y. 2009) (internal quotations and citation omitted).  If a promissory estoppel claim

15

"circumvent[s] the Statute of Frauds, a party must demonstrate unconscionable injury, i.e., injury beyond that which flows naturally (expectation damages) from the non-performance of the unenforceable agreement."  720 Lex Acquisition LLC v. Guess? Retail, Inc., No. 09 Civ. 7199 (DAB), 2011 WL 5039780, at *4 (S.D.N.Y. Oct. 21, 2011) (citation omitted); see also United Magazine Co., 146 F. Supp. 2d at 405 ("A claim for promissory estoppel may not be maintained under New York law where the alternative claim for breach of contract is barred by the Statute of Frauds, unless the circumstances make it unconscionable to deny the promise upon which the plaintiff relied.")

Like the prior two causes of action, Miller's promissory estoppel claim fails because Miller's allegations are impermissibly vague and conclusory; an unsupported contention that HSBC "intentionally represented that Plaintiff could obtain loan modification," coupled with bald allegations of harm and reliance, is insufficient.  (AC ¶¶ 62-65); see also Jirjis v. Wachovia, Case No. 10-11728, 2011 WL 87247, at *5 (E.D. Mich. Jan. 11, 2011) (holding that an "oblique reference to a promise" without identification of the manner in which the promise was allegedly made, coupled with a formulaic recitation of reliance and harm, are "unsupported allegations and conclusory

16

recitations [that] cannot withstand a 12(b)(6) motion to dismiss under Twombly and Iqbal.")

Miller's promissory estoppel claim also fails because she does not allege unconscionable injury, which she must do to survive a motion to dismiss. 720 Lex Acquisition LLC, 2011 WL 5039780, at *4 (S.D.N.Y. Oct. 21, 2011). Accordingly, this claim is dismissed. Miller contends that she is not required to allege an "unconscionable injury" because "Defendant is estopped from asserting that defense due to its own improper actions." (Pl.'s Opp'n 11.)  However, she is indeed required to plead an unconscionable injury in order to avoid application of the Statute of Frauds, which she admittedly failed to do. See 720 Lex Acquisition LLC, 2011 WL 5039780, at *4.  Further, Miller's assertion that she "forewent opportunities to use other remedies to save her home" (Pl.'s Opp'n 10) does not adequately specify what other alternatives were available to her and, as explained above, is insufficient to invoke an equitable exception to the Statute of Frauds.

## The Fraudulent Concealment Claim Is Dismissed

In alleging fraud, "a party must state with particularity the circumstances constituting fraud."  Fed. R.

Civ. P. 9(b).  A fraudulent concealment claim must meet Rule 9(b)'s heightened pleading requirements.  See Fagan v. AmerisourceBergen Corp., 356 F. Supp. 2d 198, 218 (E.D.N.Y. 2004) (applying Rule 9(b) to fraudulent concealment).  To do so, Miller must set forth "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud." Malmsteen v. Berdon, LLP, 477 F. Supp. 2d 655, 664 (S.D.N.Y. 2007) (internal quotation marks and citation omitted).

Miller's allegations fall short of Rule 9(b)'s requirements because she fails to plead "the who, what, when, where and how of the alleged fraud." Bauman v. Mount Sinai Hosp., 452 F. Supp. 2d 490, 503 (S.D.N.Y. 2006) (citation omitted); see also Abraham, 947 F. Supp. 2d at 234 (dismissing fraud claims because plaintiff failed to meet "the pleading requirements of Rule 9(b)" where plaintiff did "not identif[y] a single fraudulent statement made to her . . . [or] a single speaker who made a fraudulent statement or material omission" and did "not indicate[ ] where or when any fraudulent statements or material omissions were made").  Miller does not identify individuals, dates or any factual context for the alleged misrepresentations and omissions by HSBC.  Nor does she identify

the alleged omissions with any meaningful degree of specificity—
broad categorical descriptions regarding "opportunities for loan
modifications" and a failure to "disclose . . . motives to see
Plaintiff remain in default," are simply not enough.  (AC ¶¶ 67,
69); see also Altschuler v. Univ. of Pa. Law Sch., No. 95 CIV.
249, 1997 WL 129394, at *15 (S.D.N.Y. Mar. 21, 1997), aff'd, 201
F.3d 430 (2d Cir. 1999) (holding that plaintiff's "broad
description[s] of . . . defendants' misrepresentations" without
an "identif[ication of] any particular, specific
misrepresentation[s]" failed to meet Rule 9(b)'s particularity
requirement).


        It is also well settled that "a concealment of facts
supports a cause of action for fraud only if the non-disclosing
party has a duty to disclose."  Remington Rand Corp. v.
Amsterdam-Rotterdam Bank, N.V., 68 F.3d 1478, 1483 (2d Cir.
1995).  "Such a duty ordinarily arises where the parties are in
a fiduciary or other relationship signifying a heightened level
of trust."  Id.  "In the absence of a fiduciary relationship, a
duty to disclose may arise if: (1) one party makes a partial or
ambiguous statement that requires additional disclosure to avoid
misleading the other party, or (2) one party possesses superior
knowledge, not readily available to the other, and knows that

the other is acting on the basis of mistaken knowledge." Id. at
1484 (internal quotation marks and citation omitted).

When attempting to establish a duty to disclose based
on partial representations or superior knowledge, the pleader
"must allege facts giving rise to a duty to disclose" with the
specificity required by Rule 9(b).  See Odyssey Re (London) Ltd.
v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp. 2d 282, 296
(S.D.N.Y. 2000), aff'd, 2 F. App'x 109 (2d Cir. 2001) (citation
omitted); see also Merrill Lynch, Pierce, Fenner & Smith v.
Young, No. 91 Civ. 2923 (CSH), 1994 WL 88129, at *11 (S.D.N.Y.
Mar. 15, 1994) (stating that plaintiff must plead with
"particularity" the "context in which a duty to disclose may
have arisen," and "[i]nferences and allusions" to circumstances
under which "a general duty to disclose may arise do not
withstand Rule 9(b) scrutiny").

HSBC did not owe Miller a fiduciary duty.  See
Iannuzzi v. Am. Mortg. Network, Inc., 727 F. Supp. 2d 125, 138
(E.D.N.Y. 2010) ("As a general matter, a lender is not a
fiduciary of its borrower . . . .") (citation omitted); Weil v.
Long Island Sav. Bank, FSB, 77 F. Supp. 2d 313, 323 (E.D.N.Y.
1999) ("Under New York law, the legal relationship between a
borrower and a bank is a contractual one and does not give rise

to a fiduciary relationship."). Miller's alleged participation
in a temporary modification is not "sufficient to create a
special trust relationship." <u>Wigod v. Wells Fargo Bank, N.A.</u>,
673 F.3d 547, 571 (7th Cir. 2012) (dismissing fraudulent
concealment claim based on lack of "special trust relationship"
stemming from trial mortgage modification agreement between
parties). Again, Miller fails to establish that a written
modification agreement with HSBC existed, let alone that it
created a "special trust relationship."

Finally, Miller's bare allegation that HSBC "possessed
and utilized its superior knowledge," (AC ¶ 73), is insufficient
since "asymmetric information alone does not show the degree of
dominance needed to establish a special trust relationship."
<u>Wigod</u>, 673 F.3d at 573. Miller also fails to allege any facts —
in conclusory fashion or otherwise — to support a duty to
disclose based on partial misrepresentations.

**The Claim For A Violation Of New York General Business Law
Section 349 Is Dismissed**

"A plaintiff under [General Business Law] section 349
must prove three elements: first, that the challenged act or
practice was consumer-oriented; second, that it was misleading

in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." Stutman v. Chem. Bank, 95 N.Y.2d 24, 29 (2000) (internal citations omitted). Thus, a complaint under GBL § 349 must allege facts demonstrating that the disputed conduct had a broad impact on consumers at large and not just on the plaintiff. See, e.g., Vitolo v. Mentor H/S, Inc., 426 F. Supp. 2d 28, 36 (E.D.N.Y. 2006), aff'd, 213 F. App'x. 16 (2d Cir. 2007), cert. denied, 552 U.S. 815 (2007) (dismissing GBL § 349 claim that focused on plaintiff's losses).

Where a plaintiff makes only conclusory allegations of impact on consumers at large, a GBL § 349 claim must be dismissed. See Banc of Am. Commercial Fin. Corp. v. Issacharoff, 188 Misc. 2d 790, 798 (N.Y. Sup. Ct. 2000) (citing New York Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 314, 321 (1995) (holding that GBL § 349 claim was insufficient despite allegations of numerous instances of similar bad-faith practices respecting policyholders nationwide)); see also Harary v. Allstate Ins. Co., 983 F. Supp. 95, 99 (E.D.N.Y. 1997) ("conclusory assertion" of "injur[ies] [to] the public at large is insufficient" to state a consumer protection claim).

Here, Miller cannot maintain a claim under GBL § 349 because she has not alleged damage to the consuming public at

22

large.  She has alleged nothing more than injury to herself
resulting from a private contractual dispute, which is
insufficient to state a claim under GBL § 349.  Harary, 983 F.
Supp. at 98 (New York law precludes consumer protection claim
unless wrongful conduct "impact[s] . . . consumers generally.
Private contractual disputes are . . . not within the [consumer
protection] statute").  Indeed, as the Court held in Fournier, a
GBL § 349 claim must be dismissed when a plaintiff's claims, as
here, "only implicate Defendants' conduct towards plaintiff . .
. and lack[ ] any assertion demonstrating that Defendants
engaged in deceptive business practices with the public in
general."  2014 WL 421295, at *8.  Based on the foregoing,
Miller's GBL § 349 claim is dismissed.

        In her opposition, Miller contends, without citation
to any legal authority, that "[l]oan modifications are consumer-
oriented acts or practices."  (Pl.'s Opp'n 14.)  Miller's
argument fails because claims concerning an individual's
mortgage transaction are "specific to [those individuals], and
do not universally apply to other mortgages or impact the public
at large."  Silverman v. Household Fin. Realty Corp. of N.Y.,
979 F. Supp. 2d 313, 318 (E.D.N.Y. 2013).  The Arroyo court
dismissed the exact same GBL § 349 claim because the plaintiff's
allegations of alleged injury (like Miller's here) were

conclusory. Arroyo, 2014 WL 2048384, at *11. Accordingly, Miller's identical claim is dismissed.


**The Unjust Enrichment Claim Is Dismissed**


"The theory of unjust enrichment lies as a quasi-contractual claim. It is an obligation the law creates in the absence of any agreement." McAnaney v. Astoria Fin. Corp., 665 F. Supp. 2d 132, 175 (E.D.N.Y. 2009) (emphasis in original) (citation omitted). "A cognizable unjust enrichment claim requires a showing (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Fitzgerald v. Chase Home Fin., LLC, No. 10-cv-4148 (CS), 2011 WL 9195046, at *7 (S.D.N.Y. Feb. 28, 2011) (internal quotation marks and citation omitted). "The essence of such a claim is that one party has received money or a benefit at the expense of another." Id. (internal quotation marks and citation omitted).


Miller's unjust enrichment claim is based on her theory that HSBC was "unjustly enriched . . . [b]y preventing Plaintiff from making reduced monthly payments [and] caus[ing] Plaintiff's debt to increase, and further interest to accrue on the loan principal." (AC ¶¶ 90-91.) However, a claim for

24

unjust enrichment does not lie where there is an agreement between the parties.  Here, the existence of Miller's mortgage agreement, which she admittedly entered into (AC ¶ 4), and defaulted under (AC ¶ 17), precludes this claim.

In addition, HSBC Mortgage was not unjustly enriched by allegedly "preventing" Miller from making "reduced monthly payments."  Miller's mortgage payments were owed pursuant to her admitted contractual obligations, which she defaulted under (AC ¶¶ 4, 17).

Finally, to the extent that additional interest accrued on Miller's outstanding loan balance, that was simply the result of her admitted failure to make her contractually mandated payments.  (AC ¶ 17); Fournier, 2014 WL 421295, at *7 ("Interest accrued on the loan because, by her own admission, Plaintiff voluntarily stopped making mortgage payments").  Indeed, as the New York Court of Appeals held in Love v. State, 78 N.Y.2d 540, 544 (1991), the accrual of interest "is not a penalty [but instead] it is simply the cost of having the use of another person's money for a specified period."  See also Heraeus Precious Metals Mgmt., LLC v. Kitco Int'l, Ltd., 11 CIV. 7536, 2012 WL 4714784, at *2, n.2 (S.D.N.Y. Oct. 2, 2012).

Miller's opposition claims that she was "predestined to remain in foreclosure" as a result of HSBC's allegedly "deficient modification protocols," which allegedly increased the amount of interest that she owes, resulting in "unjust gains." (Pl.'s Opp'n 16.) Miller, however, fails to identify in what way, or by how much, the interest she admittedly owes increased. She also fails to describe how this is attributable to HSBC as opposed to her own admitted failure to pay her mortgage loan. (AC ¶ 17.) The accrual of interest is solely attributable to Miller's admitted failure to make the contractually required loan payments. See, e.g., Fournier, 2014 WL 421295, at *7 ("Interest accrued on the loan because, by her own admission, Plaintiff voluntarily stopped making mortgage payments"); Love, 78 N.Y.2d at 544 (the accrual of interest "is not a penalty [but instead] it is simply the cost of having the use of another person's money for a specified period.") For these reasons, the unjust enrichment claim is dismissed.

**The RESPA Claim Is Dismissed**

Miller's RESPA claim, is based on an alleged violation of 12 U.S.C. § 2605(e) governing qualified written requests ("QWR") and 12 C.F.R. §1024.35(e)(3) concerning her alleged submission of a "notice of error." In support of this claim,

26

Miller makes a conclusory allegation that she sent a QWR to HSBC
and that she suffered damages based on HSBC's alleged non-
responsiveness.  (AC ¶¶ 97-98, 100.)  Miller makes the same
allegation with respect to her purported notice of error.  (AC
¶¶ 99-100.)  However, Miller must plead with more specificity,
indicating, for instance, "when a QWR was sent, to whom it was
sent, why it was sent, and a summary of the request" contained
in the QWR.  See Kapsis, 923 F. Supp. 2d at 446 (finding that
plaintiff sufficiently pled QWRs were sent); see also Blanchard
v. Northway Bank, No. 13-CV-119, 2013 WL 1775460, at *2 (D.N.H.
Apr. 25, 2013) (noting that a RESPA claim which failed to
"attach the alleged QWR" or provide "any factual allegations
describing [the QWR's] contents," would constitute "nothing more
than the type of 'label or conclusion' the Supreme Court has
held to be insufficient to state a claim for relief"); Moore v.
U.S. Bank, N.A., No. 1:12-CV-1087, 2013 WL 1500594, at *3 (W.D.
Mich. Apr. 10, 2013) (dismissing RESPA claim where borrower "has
presented no facts showing that he made a QWR, besides his
conclusory allegation"); Hurd v. BAC Home Loans Servicing, LP,
880 F. Supp. 2d 747, 768 (N.D. Tex. 2012) (dismissing RESPA
claim where borrower failed to allege "a communication meeting
the requirements of" a QWR).

The Fournier Court dismissed a nearly identical RESPA
claim where "Plaintiff failed to allege, in non-conclusory
terms, that any of her four alleged QWRs complied with the
statutory definition of a QWR."  2014 WL 421295, at *5.  In
doing so, the Court cited RESPA's definition of a QWR which
requires a "statement of the reasons for the belief of the
borrower, to the extent applicable, that the account is in error
or provides sufficient detail to the servicer regarding other
information sought by the borrower."[2]  Id.  Here, as in Fournier,
Miller fails to allege in non-conclusory terms that she sent a
QWR (or a notice of error) that complies with RESPA and she did
not attach her purported QWR (or notice of error) to her AC (or
her initial complaint).  (AC ¶¶ 41-43.)


Miller's "claim" based upon 12 C.F.R. § 1024.35 also
fails because that regulation does not provide a private right
of action for damages.  Instead, the only effect that receipt of
a notice of error has is to prohibit a mortgage servicer, for
sixty days after receipt of a notice of error, from furnishing
"adverse information to any consumer reporting agencies
regarding any payment that is the subject of the notice of
error".  12 C.F.R. § 1024.35(i)(1).  Section 1024.35 provides

---

[2] Like the definition of a QWR, to qualify as a "notice of error," the notice
must include "the name of the borrower, information that enables the servicer
to identify the borrower's mortgage loan account, and the error the borrower
believes has occurred."  See 12 C.F.R. 1024.35(a).

that "nothing in this section shall limit or restrict a lender
or servicer from pursuing any remedy it has under applicable
law, including initiating foreclosure or proceeding with a
foreclosure sale."   See 12 C.F.R. §1024.35(i)(2).   Because
Section 1024.35 includes the remedies available, and because a
private right of action for alleged damages is not among them,
Miller's notice of error claim is rejected.   See, e.g., Nat'l
R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers, 414 U.S.
453, 458 (1974) ("when legislation expressly provides a
particular remedy or remedies, courts should not expand the
coverage of the statute to subsume other remedies.")


          Finally, Miller's claim of damages in the form of
"financial loss and severe mental anguish and emotional
distress," (AC ¶ 100), is also conclusory and unsupported and,
therefore, fails as a matter of law.   Roth v. CitiMortgage,
Inc., No. 12-CV-2446, 2013 WL 5205775, at *7 (E.D.N.Y. Sept. 11,
2013).   In Roth, the Court dismissed a RESPA claim where the
plaintiff, like Miller here, failed to plead "actual" financial
damages and "failed to allege any facts to support the assertion
that the alleged RESPA violations proximately caused her
'emotional distress and harm.'"   Id. at *7-8; see also Gorbaty
v. Wells Fargo Bank, N.A., No. 10-CV-3291 (NGG)(SMG), 10-CV-3354
(NGG)(SMG), 2012 WL 1372260, at *5 (E.D.N.Y. Apr. 18, 2012)

("[Plaintiff's] Complaints fail to state a § 2605 claim because they do not identify any damages she sustained as a result of [servicer's] . . . violations of § 2605"); Hepler v. Washington Mut. Bank, F.A., No. CV 07-4804 CAS (Ex), 2009 WL 1045470, at *5 (C.D. Cal. Apr. 17, 2009) (dismissing RESPA claim which contains only a "conclusory statement" of actual damages).

       Miller does not distinguish Defendant's cases, but claims that her alleged QWR was sufficiently detailed because it inquired about "suspected violations, including accounting and servicing errors," and that she sufficiently pled damages in the form of "actual harms connected with Plaintiff's inability to conduct her own investigation or consider her alternatives in the absence of an adequate response to her QWR." (Pl.'s Opp'n 17-18.)  The Arroyo court rejected the exact same arguments holding:

> Arroyo asserts that she has 'stated specifics concerning [her] QWR submissions as well as the nature of Defendant's suspected violations, including accounting and ownership issues.'  The Court, however, will not scour the Amended Complaint and attempt to piece Arroyo's claim together for her.

Arroyo, 2014 WL 2048384, at *13 (citation omitted); see also Fournier, 2014 WL 421295, at *5 ("Plaintiff failed to allege, in non-conclusory terms, that any of her four alleged QWRs complied

30

with the statutory definition of a QWR"). As such, the RESPA claim is dismissed.

**The AC Is Dismissed With Prejudice**

Although Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party should be given leave to amend "when justice so requires," leave to amend is not required where, as here, a further amendment would be futile. Hill v. Curcione, 657 F.3d 116, 123-24 (2d Cir. 2011) ("Where a proposed amendment would be futile, leave to amend need not be given.") (citing Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 18 (2d Cir. 1997)).

Miller has had ample opportunity to correct the deficiencies in her pleadings and has been unable to do so. Indeed, the gravamen of the allegations in Miller's AC is that she was not offered a permanent loan modification. (AC ¶¶ 11-13.) Under New York law, however, Miller is not entitled to a permanent loan modification as a matter of law and HSBC is not liable for failing to offer her one. See, e.g., Fournier, 2014 WL 421295, at *7; Ilardo, 940 N.Y.S.2d at 841.

A third attempt by Miller to state a claim in this action would be futile.  See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 273 F. Supp. 2d 351, 390 (S.D.N.Y. 2003), aff'd sub nom. Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161 (2d Cir. 2005), cert. denied, 546 U.S. 935 (2005) (plaintiffs had no right to amend and re-plead where they had "ample opportunity to craft their complaints" and were on notice of pleading deficiencies).  Therefore, because Miller's deficient pleading cannot be remedied by amendment, her AC is dismissed with prejudice.  Konowaloff v. Metro. Museum of Art, 10 CIV. 9126 SAS, 2011 WL 4430856, at *8 (S.D.N.Y. Sept. 22, 2011) aff'd, 702 F.3d 140 (2d Cir. 2012) ("This is [plaintiff's] second attempt to craft a viable complaint, and its shortcomings are of the sort that cannot be remedied by amendment. Accordingly, I dismiss the Amended Complaint with prejudice.")

## Conclusion

Based on the above conclusions, the motion of HSBC to dismiss Miller's AC is granted and the AC is dismissed with prejudice.

**New York, NY**
**February 10 , 2015**

ROBERT W. SWEET
U.S.D.J.